IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

December 6, 2024

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

RICKY H.
Intervenor Below, Petitioner

v.) No. 24-ICA-139    (Fam. Ct. McDowell Cnty. Case No. FC-27-2012-D-129)

DAVID N.,
Petitioner Below, Respondent

and

FRANCIS H.,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Ricky H.[1] ("Grandfather") appeals from the March 11, 2024, order of the Family Court of McDowell County, following a hearing on his petition which sought to modify his grandparent visitation with B.H., a minor, and to hold Respondent David N. ("Father") in contempt for failing to comply with the family court's prior order on grandparent visitation.[2] Neither Father nor Respondent Francis H. ("Mother") participated in this appeal. The issues on appeal are whether the family court erred in its modification of Grandfather's visitation and by declining to hold Father in contempt.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother are the parents of B.H., who was born in 2011. Father has custody of B.H. and at least prior to April of 2021, Mother had been absent from the child's life for

---

[1] Consistent with our practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in the case. *See* W. Va. R. App. P. 40(e)(1); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Ricky H. is B.H.'s maternal grandfather and is represented by E. Raeann Osborne, Esq.

1

several years and a nonparticipant in the family court proceedings. By order dated May 27, 2021, the family court granted Father's request to relocate with B.H. to Florida. This order also granted Mother and Grandfather visitation with B.H. for three weeks in the summer and during the child's Christmas and spring vacations from school. B.H. was to fly from Florida to West Virginia, where she would be picked up at the airport by Grandfather.

In February of 2023, Father filed a petition for modification and in response, Grandfather filed a counter-petition for contempt, alleging Father's noncompliance with various provisions of the May 27, 2021, order. On April 24, 2023, the family court entered an order on Father's petition for modification. In that order, the family court found that Father admitted to not facilitating visitation between the B.H. and Grandfather for Christmas of 2022 and the child's 2023 spring break, despite Grandfather's willingness to pay the child's airfare. However, that order further reflected that the parties had settled their issues at the hearing and the family court directed its prior orders to remain in full force and effect. There was no mention of, or ruling on, Grandfather's contempt petition, and there is no indication in the record that this order was appealed.

On January 24, 2024, Grandfather, through counsel, filed a combined petition for modification and contempt against Father. Regarding modification, the petition alleged that a substantial change in circumstances had occurred since the family court issued its May 27, 2021, order; Father did not allow B.H. to visit for Christmases in 2022 and 2023; three years had passed since entry of the May 2021 order, B.H. was twelve years of age, mature, and had stated a reasonable preference for increased visitation with Grandfather. On this issue, Grandfather sought to modify his existing visitation schedule by increasing his visitation to five weeks in the summer, in addition to visitation during the child's Easter and Christmas breaks.

As grounds for contempt, the petition alleged that Father had refused to comply with the visitation provisions contained in the family court's May 2021 order, and that Father had persistently interfered with Grandfather's attempts to have telephone contact with B.H. As relief, Grandfather sought makeup visitation and any other sanctions the family court deemed appropriate.

The family court held a hearing in the matter on March 6, 2024, and the court memorialized its findings of fact and conclusions of law in the order presently on appeal. In that order, the family court set forth the thirteen statutory factors to be considered for grandparent visitation under West Virginia Code § 48-10-502 (2001).[3] Thereafter, the

---

[3] In making a determination on whether to grant grandparent visitation, West Virginia Code § 48-10-502 lists the following factors a family court must consider: (1) The age of the child; (2) The relationship between the child and the grandparent; (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent; (4) The time which has elapsed since the child last had

2

family court noted that it had considered Grandfather's past attempts to interfere with B.H.'s relationship with Father, which included allegations of sexual abuse and exposing B.H. to an adult male, who was not Father, but was pursuing a parental relationship with the child. The family court also noted that it had considered the proposed visitation schedule and found that it would require B.H. to spend twelve hours in a vehicle to travel one-way from Florida to West Virginia and then the same amount of time to return. Also considered was the expense of travel for Father and the impact on his work schedule to transport the child. The court concluded that it was not in B.H.'s best interest to spend twenty-four hours in a vehicle for a one-week visitation during her Christmas and spring break.

Given these considerations, the family court modified Grandfather's visitation. Central to this appeal, the court directed that Grandfather would receive twenty-eight consecutive days in the summer with B.H., would no longer enjoy Christmas or spring break visitations, and that Grandfather was to provide $1,000.00 to Father to offset the time and expenses he incurred by transporting the child to and from West Virginia for visitation with $500.00 due at the time the child was delivered to West Virginia, and the remaining $500.00 due when Father traveled to West Virginia to return B.H. to Florida.

Next, the family court denied Grandfather's contempt petition. Here, the court found that while Father acknowledged that he did not provide B.H. for two years of Christmas visitation, it recognized the significant financial burden that travel for those visitations imposed upon Father, as well as Father's lack of financial support from Mother to support B.H. For those reasons, the family court declined to hold Father in contempt. This appeal followed.

On appeal, we apply the following standard of review:

---

contact with the grandparent; (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing; (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child; (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule; (8) The good faith of the grandparent in filing the motion or petition; (9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent; (10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents; (11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence; (12) The preference of the parents with regard to the requested visitation; and (13) Any other factor relevant to the best interests of the child.

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Furthermore, as it relates to a family court's ruling on civil contempt matters, we apply the same standard of review as the Supreme Court of Appeals of West Virginia, which has held:

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

From the outset, we note that Grandfather is the only petitioner in this case. However, upon review, the body of his brief makes joint arguments on behalf of Grandfather and Mother. That is a misstatement of the posture of this appeal. Rather, as we have established, the underlying petition for modification and contempt was filed solely on behalf of Grandfather and only contained allegations against Father. Further, the order before us only addresses Grandfather's petition. Mother was not named in the body of Grandfather's pleading, nor has she filed a response in this appeal to allege any cross assignment of error with respect to the family court's order. As such, any argument made on behalf of Mother is not properly before us in this appeal.

On appeal, Grandfather advances two arguments. First, he argues that the family court abused its discretion when it declined to hold Father in contempt. Second, the court abused its discretion by modifying Grandfather's visitation in violation of various provisions contained within chapter 48, article 9 of our code. Specifically, he argues that the family court's modification lacked sufficient findings of facts and conclusions of law to support its deviation from the objectives for determining the best interests of a child pursuant to West Virginia Code § 48-9-102(a) (2022). Next, the family court failed to find a substantial change of circumstances existed prior to modifying his visitation in violation of West Virginia Code § 48-9-401(a) (2022). Lastly, the family court implemented a new visitation schedule which ignored the firm and reasonable preferences of B.H., who had

4

expressed a desire to spend more time with Grandfather pursuant to West Virginia Code § 48-9-402(b)(4) (2022). Upon review, we are not persuaded by these arguments.[4]

On the contempt issue, Grandfather argues that Father had acknowledged his failure to comply with the court-ordered grandparent visitation and Grandfather has filed two contempt petitions against Father within one year on this issue. Thus, Grandfather contends that a finding of contempt and an award of makeup visitation was required. We disagree. The denial of Grandfather's contempt petition was a discretionary ruling made by the family court. In its decision, the family court considered the fact that Father had not complied with grandparent visitation but excused the noncompliance based on the Mother's lack of financial support for B.H., and Father's lack of available financial resources. Other than stating his disagreement with the family court's ruling, Grandfather sets forth no authority to establish that the family court's denial of his contempt petition was an abuse of discretion. Therefore, we affirm the family court on this issue.

Next, we find no merit in any of Grandfather's assertions that the family court's order violated provisions chapter 48, article 9 of our code. First, article nine of that chapter deals exclusively with the allocation of custodial and decision-making responsibility for children between parents. While Grandfather consistently refers on appeal to his visitation as his "parenting plan," that is a misstatement of our law. Grandfather's visitation is not subject to a parenting plan or any provision under chapter 48, article 9. Rather, any judicial determination related to grandparent visitation is exclusively controlled by The Grandparent Visitation Act ("Act"), which is codified under West Virginia Code §§ 48-10-101 to -1201. *See* W. Va. Code § 48-10-102 (2001) (stating an express intent of the Legislature for grandparent visitation determinations to be exclusive to the Act's provisions).

Furthermore, as the family court correctly observed, the Act sets forth thirteen factors for it to consider when ruling on any motion or petition for grandparent visitation. W. Va. Code § 48-10-502. Relevant here, is that none of those factors require a court to consider the child's preference. Moreover, nothing under the Act requires a showing of a substantial change of circumstances prior to modifying a grandparent's visitation. Instead, West Virginia Code § 48-10-1001 (2006) controls this issue and states: "Any . . . court that

---

[4] Grandfather also argues that the family court erred by not permitting meaningful contact between B.H. and her half-sibling belonging to Mother and her husband. However, this argument is not properly before this Court, and we decline to address the same. Sibling visitation was not raised in Grandfather's petition or the family court order which are the subject of this appeal. Rather, the record reflects the only mention of this issue was in Grandfather's counter-petition for contempt that was filed in response to the modification petition filed by Father in February of 2023; however, that matter was settled by agreement, was not appealed, is now a final order, and, thus, no longer subject to this Court's jurisdiction.

grants visitation rights to a grandparent shall retain jurisdiction . . . to modify or terminate such rights as dictated by *the best interests of the minor child*." (emphasis added); *see also* W. Va. Code § 48-10-101 (2006) (setting forth the legislative finding that in matters of grandparent visitation, "the best interests of the child or children are the paramount consideration"). Thus, under the Act, a court's modification of grandparent visitation is guided by the factors delineated in West Virginia Code § 48-10-502 and the child's best interest.

Here, the family court's order shows it ruled upon Grandfather's petition for modification based upon consideration of the requisite factors under West Virginia Code § 48-10-502 and exercised its lawful discretion to modify the visitation schedule to reflect what it found to be in B.H.'s best interest. As such, we find no error or abuse of discretion in the family court's decision.

Accordingly, we affirm.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

6